Argued and submitted September 6, the decision of the Oregon Tax Court affirmed December 30, 1988

KELLOGG SALES COMPANY et al,
*Appellants,*

*v.*

DEPARTMENT OF REVENUE,
*Respondent.*

(TC 2533; SC S34845)

766 P2d 1029

James N. Gardner, Lindsay, Hart, Neil & Weigler, Portland, argued the cause and filed briefs for appellants.

Jerry Bronner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Dave Frohnmayer, Attorney General, Salem.

Before Peterson, Chief Justice, Linde, Campbell, Carson, Jones and Gillette, Justices, and Van Hoomissen, Justice Pro Tempore.

LINDE, J.

## LINDE, J.

Taxpayers appeal a decision of the Oregon Tax Court sustaining assessments of Oregon corporation excise taxes and Multnomah County Business Income Taxes for the years 1974 to 1981. The disagreement concerns the meaning of the phrase "Oregon portion of company net income" in a 1962 agreement settling a dispute between Kellogg Sales Company (KSC) and defendant's predecessor, the Oregon State Tax Commission, over the apportionment of KSC income to Oregon during the years 1955 to 1959.

KSC is the sales arm of Kellogg Company. It is separately incorporated but has no storage facilities of its own, only selling merchandise to be delivered by Kellogg Company, and it is managed to produce minimal income (.01 percent of sales proceeds) for KSC. Before 1959 and the enactment by Congress of standards for state taxation of interstate business, there was some uncertainty whether a state could tax income derived from interstate sales if the seller did no more than solicit orders from buyers in the state. During the disputed years, 1955 to 1959, KSC filed reports allocating to Oregon a share of the income of its parent, Kellogg Company, as well as its own, but it excluded income from sales for which it solicited orders.

The parties settled that dispute in 1962 by negotiating an agreement to count only one-half of sales in the three-factor formula (based on sales, wages, and property) for allocating income to Oregon. The agreement provided in part that:

> "The three-factor formula as set forth in the 1959 Commission Regulations, Reg. 4.280, be applied in determining the Oregon portion of the company net income, provided that the sales factor of the formula be reduced one-half * * *."

It extended to "all future years provided the company's method of operation in distributing its products to Oregon customers is conducted substantially in the manner such method of operation was conducted during the years herein." Defendant Department of Revenue terminated the agreement in 1984 for tax years after 1985.

In 1962, when the agreement was made, KSC was Kellogg Company's only domestic subsidiary, and it is agreed

that "company net income" at that time included KSC's income combined with that of Kellogg Company. Kellogg Company acquired other subsidiaries in 1969 and 1970. In 1984, after an audit covering the years 1974 to 1981, the department assessed deficiencies based on taxing Kellogg Company and its subsidiaries on a worldwide unitary basis. Taxpayers claim that the 1962 agreement fixed "company net income" as including only the income of Kellogg Company and KSC and that including income of other subsidiaries in the total income apportioned to and taxed in Oregon contravenes the agreement. The department contends, to the contrary, that the agreement only compromised the dispute over taxation based on sales and did not freeze what might in the future constitute the "company net income" to be allocated by the agreed formula.

The tax court agreed with the department. After reviewing the evidence submitted by the parties concerning the execution and implementation of the 1962 agreement, the court concluded:

> "Plaintiffs' brief strongly asserts that both parties intended 'company net income' to refer to the combined net income of Kellogg and KSC. The court agrees. However, no real significance can be attached to that fact when, at the time the agreement was executed, that was the only income considered taxable. KSC is attempting to take an additional step and read into the agreement an intent that no change in corporate organization, tax policies or anything else would affect the apportionable income. There is no evidence to support such a finding. To the contrary, the terms of the agreement make it clear that the agreement was to continue for future years only where no changes in 'the company's method of operations' occurred. (Exhibit 1, ¶ 3.) The termination at will clause of paragraph V also adds to this view. It is highly unlikely that either party would intend to establish something so important as the definition of net income by implication alone."

10 OTR 480, 485 (1987). We agree with the tax court's conclusion and affirm its decision.

Because the facts are of interest only to the litigants, we do not recite the evidence in detail. Briefly, the phrase "company net income" apparently was taken from an agreement previously negotiated with another taxpayer on nearly identical terms; it was not newly negotiated with an eye on

Kellogg Company's corporate structure. Taxpayers rely on the parties' understanding at the time of the 1962 agreement and on their subsequent actions to show that the parties meant "company net income" to include only Kellogg Company's income and that of KSC but no other subsidiaries.

First, taxpayers state that the reason for the agreement was the possibility that KSC and Kellogg might escape taxation in Oregon altogether. That is true, but it only explains the "fifty-fifty" compromise of the sales factor of the allocation formula, the only basis for Oregon taxation. It does not bear on the meaning of "company net income." Taxpayers quote at length from the testimony of a witness who signed the 1962 agreement as the corporate secretary of KSC and Kellogg Company, but his testimony only showed that the taxing authorities said nothing about including other subsidiaries in KSC's combined income statement until the 1984 audit that led to the present appeal.

Second, taxpayers observe that the Oregon Tax Commission knew that Kellogg Company had other subsidiaries besides KSC and that income of those subsidiaries was not included in KSC's combined returns. All these, however, were foreign subsidiaries operating only abroad, and in 1962 the state was not requiring worldwide unitary reporting of corporate income. The commission's knowledge that any particular corporation, in this case Kellogg Company, had foreign subsidiaries therefore is scant evidence that the commission agreed to exclude the income of that corporation's foreign subsidiaries if it were to extend worldwide unitary reporting to other corporations. Like the tax court, we think it improbable that the commission, in settling a controversy over allocation based on sales by reducing that factor by one-half, also tied its hands with respect to future determinations of the income properly included in a taxpayer's combined report of its "company net income" without any expression to that effect. The stated object of the agreement was not "determining company net income," but "determining the Oregon portion of company net income."

Taxpayers chiefly rely on their third argument, that the taxing authorities showed their agreement with KSC's construction of "company net income" by their long acceptance of KSC's statements combining only its own and Kellogg Company's income. KSC's tax returns for the years 1966

to 1971 were audited in 1974. In answer to a letter asking whether KSC still operated in the same manner postulated as the basis of the 1962 agreement, KSC said that it did so; but in another letter KSC also told the department that it excluded "nonapportionable income" in 1969 and 1970 from "foreign sources income." Moreover, KSC notes, Kellogg Company had other domestic subsidiaries during 1969, 1970 and 1971. The department was on notice that KSC excluded the income from all other subsidiaries of Kellogg Company from its return and therefore, according to KSC, the department acquiesced in KSC's restrictive construction of the phrase "company net income" in the 1962 agreement.

The department responds, in essence, that it began only after 1962 to apply Oregon taxes to a company's world-wide unitary income, that it does not require a company to file such a return without first performing a field audit, that the department's limited resources delay such field audits, that there was no sign that KSC's returns combining its income only with that of Kellogg Company had any important tax consequences for Oregon, and that therefore the delay before the department's 1981 audit (which led to the demand for reporting worldwide combined income) does not imply that until then the department believed the 1962 agreement to confine "company net income" as KSC argues.

We need not set out additional details of the parties' contentions about tax disadvantages to KSC of sticking with its position concerning the 1962 agreement, evidence concerning KSC's and Kellogg Company's practices in other states, and opposing inferences to be drawn from the department's failure to terminate the agreement until 1984. We are not dealing with an issue of estoppel by conduct but with the interpretation of the parties' 1962 agreement—whether in using the phrase "company net income" they bound them-selves to the particular combination of the parent Kellogg Company and KSC that KSC used at that time. Taxpayers' contentions and supporting evidence have been ably pre-sented, but ultimately the tax court was not convinced that the Oregon Tax Commission in 1962 meant to do anything more than accept one-half of the usual sales factor in allocat-ing to Oregon the "company net income," whatever that might be in the future, and neither are we. KSC's position implies

that if Kellogg Company underwent an internal reorganization that attributed substantial income to some other subsidiary, this income would be shielded from KSC's combined reporting until the department learned of it and got around to terminating the 1962 agreement. As already stated, the phrase was copied from an earlier settlement with another taxpayer and not given any special attention in the KSC negotiation. We are not persuaded that in using the phrase, the parties gave up the right to reexamine from time to time what was properly to be included in the "company net income" to be taxed under the compromise allocation formula.

The decision of the Oregon Tax Court is affirmed.